UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Ecequiel Reyes, )<br>)<br>Defendant. )<br>) | 7:24 CR00631 |

---

### SENTENCING MEMORANDUM
### ON BEHALF OF ECEQUIEL REYES

**INTRODUCTION**

On May 5, 2025, Mr. Ecequiel Reyes pled guilty to Count 1 of Information 24 CR 631, charging Possession of a Controlled Substance with Intent to Distribute under Title 21, U.S.C. § 841(b)(1)(C). There is no statutory mandatory prison sentence for this offense. The defense believes that a significant departure from the recommended guideline range is warranted by several factors, including Mr. Reyes' background, his acceptance of responsibility, and the unique circumstances surrounding this case.

**GROUNDS FOR IMPOSITION OF A NON-GUIDELINE SENTENCE**

1

Regarding the case at bar, Ecequiel Reyes ("Ecequiel," "Mr. Reyes," or "Reyes") has fully accepted responsibility for his criminal conduct, as indicated by his actions in coming forward to the Government to voluntarily admit his culpability and, ultimately, pleading guilty. Mr. Reyes asks this Court to consider the factors herein when determining an appropriate sentence.

As set forth below and demonstrated by numerous letters submitted on his behalf, Mr. Reyes has been a positive contributing member of society, maintains significant family ties and recognizes the impact his crime has had on himself, his family and friends, and the community as a whole. Described below are the pertinent characteristics and history that we ask this Court to consider.

## BACKGROUND

Ecequiel Reyes, 36, was born at Lutheran Hospital in Brooklyn, New York, on XXXX, 1989, to his mother, Cipriana Fermin Reyes, and his father, Eddy Reyes Sr. His parents met in the Dominican Republic and eventually moved to the United States where they both became US Citizens. The two were married for over 26 years but ultimately separated and divorced.

Cipriana, 63, attended high school and college in the Dominican Republic. When Ecequiel was still young, Cipriana owned and operated a hair salon in Brooklyn, NY. After selling the store, she put her college degree to work as a substitute teacher at P.S. 45 in Brooklyn, NY. She ultimately retired from teaching in 2017. She presently is in good mental health but suffers from the effects of rheumatoid arthritis.

Eddy Reyes Sr., 65, is semi-retired and owns and manages an apartment building in the Dominican Republic. Prior to retirement and throughout Ecequiel's childhood and late teen years, Eddy Sr. owned Ralphy's Tire Shop in Sunset Park, Brooklyn, which opened in 1987. 1He operated the shop 7 days a week and sold the shop in 2019. He is presently diagnosed with diabetes and high blood pressure and recently suffered a stroke.

While both parents now reside in the Dominican Republic, Eddy Sr. frequently travels back and forth to New York to spend time with their children, grandchildren and his mother, who is in her late 90's. However, due to her arthritis, Cipriana does not travel back to New York as frequently, particularly in the colder months.

Ecequiel Reyes has two siblings, Sara Reyes and Eddy Reyes Jr. Sara, 31, lives in Santo Domingo, Dominican Republic. While she attended high school in New York, she ultimately graduated from college in the Dominican Republic where she now teaches English. She is recently divorced and lives with her 2 children, ages 10 and 6. Like her father, she travels often to New York to spend time with family.

Eddy Reyes Jr, 39, lives in Staten Island with his wife and 3 children, ages 16, 10 and 1 1/2 years of age. He presently owns and operates a wine store, Il Vignetto, out of Carroll Gardens, in Brooklyn, New York. Eddy Jr. is a co-defendant in the present criminal case. Prior to his involvement in this case, he had a previous narcotic's conviction in 2018 in New York State Court and finished his probation in 2023. 2

---

1 Ecequiel's father first worked as a butcher in a supermarket for approximately five years.
2 Ecequiel Reyes has a prior arrest in 2011 for Failure to Provide Sustenance to an animal. The case was not prosecuted as Mr. Reyes was able to show that the animal, a stray sick dog he had adopted, was not in fact being abused or deprived sustenance. Additionally, Mr. Reyes has a 2020 misdemeanor conviction for Conspiracy in the Fourth Degree in Kings County, Brooklyn. No jail time was associated with this conviction.

3

Ecequiel Reyes, who was raised in the Christian faith, grew up in the Flatbush area of Brooklyn, NY. Initially, Mr. Reyes' parents moved the family into a rent-stabilized one-bedroom apartment. They worked long hours and, despite early financial troubles, were able to provide a safe home for their children with food and essentials. Eventually, they were able to earn enough to purchase a home for the family near Ocean Parkway, also in Brooklyn. While Ecequiel recalls a happy childhood, he and his siblings were often present during fights between their parents who had differing views about life and particularly, religion. 3

Today, Mr. Reyes is engaged to Issamar Plascencia, 25. Issamar is attending nursing school on-line through Nightingale College. She will be doing her clinical training next month. The two have been together for over six years and engaged for over a year. They live in a two family home in Metuchen, NJ, which is owned by Mr. Reyes. 4Mr. Reyes and Issamar have one child, A███ R███, who turned two in August.

In addition to A███, Mr. Reyes has two children from a prior ten-year relationship with Mayroby Fernandez, a New York City Police Officer. His first child, A███ R███, is 10 years old and going into the 6th grade. A███ R███, is 8 years old and began the 4th grade in September. While the two oldest children live with Mayroby in Staten Island, Ecequiel sees the children weekly, maintains an excellent relationship with their mother and provides financial support for them. Ecequiel is involved with all aspects of his children's lives, whether it be feeding and changing A███ or taking his older children to school, he is, by all who know him, an incredible and present father. He attends all of A███ sport practices and games and never misses a school trip, party or graduation for either A███ or A███. He is considered the "go to" school parent volunteer for both children.

---

3 Ecequiel Reyes' education, work history and mental and physical health are included later in this document.
4 Isamar's sister and her immediate family live upstairs and pay rent.

Ecequiel recognizes that his actions in December have let down his children in unimaginable ways and he continues to thrive to be the best role model he can be, to better himself, to be present for his little ones and to teach them right from wrong.

Ecequiel has a strong bond with his entire family network who he sees and speaks to regularly. He speaks to his parents and sister often, assists his brother with his kids, taking them to and from school, and sees his elderly grandmother, who resides in Brooklyn, NY, every other Sunday. All are aware of his present circumstance and are there for him. In fact, his parents, cousins, sister-in-law and fiancé were all present in court to support Ecequiel when he pled guilty in May of 2025.

## **EDUCATIONAL/EMPLOYMENT HISTORY**

Mr. Reyes attended elementary school at PS 17 in Brooklyn, NY, followed by Ditmas Junior High School. Early on, his teachers became concerned with Ecequiel's ability to read and write and had suggested he be moved to specialized classes. However, Ecequiel's parents, particularly his father, were resistant to moving him as they didn't want him labeled with a "disability."

Following junior high, he attended James Madison High School, where he graduated in 2007. Despite his learning issues, he maintained good grades and was on the junior varsity and varsity football team for four years and the wrestling team for two years.

At the age of 12, while still in junior high school, Ecequiel worked after school and weekends packing bags at the local C-Town as well as helping his father at his tire shop.

5

While attending high school, Ecequiel began working at Shawn's Fine Wines and Spirits, located in Park Slope, Brooklyn, N.Y. He began as a stock clerk and deliveryman and was later promoted to a sales position. He recalls a close relationship with his boss, who paid him generously and spent quality time teaching him the ins and outs of the wine industry. Ecequiel continued working at Shawn's until 2009, 2 years after graduating from high school.

In 2009, Ecequiel left the job and began working for a construction company. He also began attending the Borough of Manhattan Community College in New York City, where he majored in business management. However, after completing 1 ½ semesters he left college, finding it too difficult to attend school and work full time.

In 2011, Ecequiel opened a small boutique clothing shop in the vicinity of 4909 4th Avenue, Brooklyn, NY, housed within his father's tire shop. He called the store "Brooklyn Styles". He would later give up the shop to work as a sales representative at Manhattan Beer, now called Phoenix Beverage, in Brooklyn, NY, where he remained for a year.

In 2013, Mr. Reyes opened two tire stores: Pit Stop 1 in Bay Parkway, Brooklyn, and Pit Stop 2, in Sunset Park, Brooklyn. He ran the businesses for two years, then sold them in 2015 to pursue his dream of opening his own wine store.

In 2016, Ecequiel opened and operated Alina's Wine & Liquor Store in Brooklyn, NY. While he loved owning the store, the business required him to be at work night and day for weeks on end. As the years went on, the separation from home began to take a toll on him and his family as Ecequiel felt he was not present enough for his children. Ultimately, he sold the business in 2023.

Today, Ecequiel is employed at Il Vignetto Liquor Store in Brooklyn NY. The business is owned by his brother and his father. He also earns additional money through rental properties

and he has begun buying and selling used vehicles and works in construction, part time, through Nelson Renovation Group

The defense asks this Court to consider Mr. Reyes' lifelong commitment to work and efforts to provide for his growing family when determining an appropriate sentence.

## MEDICAL HEALTH/MENTAL HEALTH/ALCOHOL/DRUG USE

Mr. Reyes has no known mental health issues. Since his arrest, he has felt anxiety over the choices he has made and the fear and remorse of how those decisions will ultimately impact his family, most significantly his children. He does not see any mental health professionals.

At the age of 13, Ecequiel suffered a serious injury when a tire popped while he was working at his father's shop. The accident caused multiple left arm fractures, requiring 140 staples and the placement of permanent aluminum screws and plates. He was hospitalized for 2-3 weeks and today, has permanent scarring and is still unable to fully straighten his left arm.

In 2013, at the age of 24, he suffered additional injuries after a car accident left him with a blood clot to the brain. At the time, doctors prescribed Percocet to help deal with excessive back pain. He began using the pills daily and within weeks, he was addicted. When the pills were not available, he began using heroin. The addiction made his relationship with his then girlfriend unsustainable and he began to mismanage his money. Finally, after his first child was born, Ecequiel had enough of his addiction and decided to go "cold turkey." He has not used any controlled substance since that time.5

---

5 On June 2, 2025, Reyes tested negative for the presence of any illicit substances.

7

Since a child, Ecequiel has endured the pain and embarrassment associated with having a serious weight problem. At the age of 10 and onward, classmates would often bully him, calling him "bola de yuca," which means "yuca ball" or "butterball" in English. Ecequiel's brother, Eddy Jr., would often try to protect him, but the bullying continued.

Adding to his stress, Ecequiel began having severe acne issues by the time he was about 14 years old, adding to his already low self-esteem. However, as he entered high school, he began exercising more and felt more confident. Thus, he was not only able to defend himself but took it upon himself to defend others who were also being bullied.

The weight issue, however continued throughout his teen years into adulthood. Knowing that his father suffered from health risks associated with weight related issues, Ecequiel decided to undergo gastric bypass surgery in 2017. The surgery was a success as it brought him down from over 260 pounds to 160 pounds. Today, he still feels the positive effects from his weight loss procedure.

While Mr. Reyes has been lucky in the past few years to enjoy good health, he recently suffered a medical setback as a result of being a passenger in a March 2025 motor vehicle accident.[6] In recent months, the pain became more severe, with radiating pain in his lower back, burning sensations around his neck, and sharp pains to his shoulder area. He was diagnosed with intervertebral and cervical disc displacement in several areas along with multi-level thecal sac impingement and facet arthropathy.

On June 26, 2025, Mr. Reyes underwent an epidural procedure to attempt to alleviate the pain and discomfort, followed by a second epidural. When both procedures proved to be ineffective in relieving his pain and discomfort, Mr. Reyes scheduled surgery.

---

6 Ecequiel was a passenger in the vehicle his brother, Eddy Jr., was driving on the way to take their kids to school. A vehicle attempted to merge improperly, causing the crash.

8

On July 25, 2025, Ecequiel underwent a Lumbar Discectomy with Rhyzotomy and Facet Joint Fusion at LR Medical, PLLC in Brooklyn, NY. Despite the pain both before and after surgery, he has avoided taking any and all narcotic drugs and has continued to test negative for the presence of any illegal substances. Since surgery, he continues to wear a back brace and, despite the pain, is working towards a hopefully full recovery.

### **PRETRIAL SUPERVISION**

Currently, Mr. Reyes is being supervised by Pretrial Services in New Jersey and is awaiting sentence. He has been out on bail since November of 2024. Following his guilty plea in May of 2025, he was required to wear an ankle monitor. His present pre-trial officer, Katiana Delagrande'Anse, indicates he has been a model defendant under pretrial supervision, having never missed an appointment and testing negative for all substances.

Such behavior on the part of Mr. Reyes, defense believes, demonstrates his ability to not only live a law-abiding life, but to live within the required conditions placed upon him under supervision. Mr. Reyes' responsible behavior in following the stringent rules of pretrial supervision, indicates an openness on his part for positive change and allows for an optimistic view of his full potential. His compliance, along with his minimal criminal history, provides ample reason to believe that Mr. Reyes, who is 36 years old at the time of this letter, will never recidivate.

Now, as Mr. Reyes faces sentencing, he asks this Court to consider all the aforementioned factors when determining an appropriate sentence. Thus, while Mr. Reyes acknowledges the seriousness of the crimes for which he was convicted, he asks this Court to

consider his conviction in the context of his life and impose the minimum sentence under the law.

**NATURE/CIRCUMSTANCE OF OFFENSE**

Mr. Reyes pled guilty on May 5, 2025. His guilty plea derives from an incident occurring in December of 2023, in which two individuals were arrested: Eddy Reyes Jr. ("Reyes Jr." or "Eddy Jr."), who is Ecequiel Reyes' brother, and Cesar Rodriguez-Valdez ("Valdez").

On December 22, 2023, a Complaint was filed under 23 MJ 7653, in the County of Westchester, laying out the allegations. In sum and substance, on December 19, 2023, a confidential informant (CI) placed a call to Valdez, discussed a potential drug transaction in which the CI would purchase both heroin and cocaine from Valdez. They were to meet initially in an Edison, NJ, parking lot for the CI to obtain a sample of the narcotics.

That same day, law enforcement observed the CI enter a Dodge RAM and, through a broadcasting device, listened to a discussion between the CI and Valdez in which they discussed Valdez selling about 10 kilograms of heroin and 5 kilograms of cocaine to the CI. Valdez also provided the CI with a narcotic sample.

On December 20, 2023, Valdez indicated to the CI that he could provide approximately 8 kilograms of heroin and 5 kilograms of cocaine the following day. The two agreed to meet in the vicinity of a hotel in Yonkers to complete the sale. Valdez, in a Dodge Ram, arrived at the location, contacted the CI, and the two met. When the CI asked to see the narcotics, Valdez contacted another individual via Face Time. The individual, who the CI later identified as Eddy

Reyes, Jr, showed the CI the drugs. Valdez then left the hotel in his vehicle and headed to a second hotel where he stopped next to a silver pickup truck and then drove off.

Soon after, law enforcement observed a Honda Civic, driven by Eddy Reyes Jr. heading in the same direction as Valdez's vehicle. After stopping the Honda Civic, law enforcement attempted to stop Valdez in his Dodge Ram, but he fled, ultimately crashing into multiple other vehicles. Approximately one kilo of a substance that tested positive for the presence of fentanyl was found directly outside of Valdez's crashed vehicle while inside the vehicles law enforcement observed approximately one kilogram of a substance that tested positive for the presence of cocaine. Law enforcement later returned to the silver pickup truck and found the remaining drugs.

As the Government moved forward with charges against Eddy Reyes Jr. and Cesar Rodriguez-Valdez, no charges were brought against Ecequiel Reyes. In fact, almost one year after Reyes Jr. and Valdez's arrest, there was no indication that Ecequiel would ever be charged.

In October of 2024, almost one year after the December 2023 events, Ecequiel Reyes made the decision to voluntarily come forward to the Government and admit his part in the December incident. Ecequiel acknowledged knowing Cesar prior to the arrest. Cesar had approached him on numerous occasions prior to December asking if he had any contacts to provide him with drugs to sell, which Ecequiel denied having as he did not want to get involved.

However, in December of 2023, Cesar again came to Ecequiel, desperate for help and begging for a drug contact, claiming that he would lose his wife, his family, everything if he could not get money quickly. This time Ecequiel relented and put Cesar in contact with a supplier he had known from the old neighborhood. While Cesar initially indicated the deal would involve a smaller amount of drugs, Ecequiel later learned that it would be a more significant

11

amount. As the supplier did not know Cesar and was uncomfortable selling to a complete stranger, Ecequiel vouched for Cesar.

After the drugs were procured, Cesar was originally going to bring the drugs directly to the purchaser to complete the transaction. However, when the location for the sale was changed by the buyer, the supplier asked for Ecequiel to be present at the location to ensure the supplier would get his payment. Ecequiel agreed. Cesar then brought the drugs to Ecequiel who placed them in a silver pickup truck. Cesar drove the Dodge Ram to the sale location while Ecequiel drove the silver pickup to an area nearby. Before heading to the location, Ecequiel asked his brother, Eddy Reyes Jr. to also come to the sale location for the purpose of driving Ecequiel home once Ecequiel left the silver pickup for Cesar.

However, when Eddy Reyes, Jr. observed law enforcement in the area, he began to drive away from the location (where he was eventually stopped). Ecequiel, who at the time was no longer in the silver pickup, walked away from the location and caught an Uber.

Ecequiel fully acknowledges his role in the crime. He also notes that while the CI was accurate in identifying Eddy Reyes Jr. as being the person on the FaceTime call, it was actually Ecequiel Reyes, on a merged line, who showed the drugs in the vehicle to Cesar and the CI, not Reyes Jr. 7

This behind the scenes description of that day provided the Government with a clearer understanding of the various roles each individual actually played and the more limited role Eddy Reyes Jr. played. Ultimately, had Ecequiel not made the decision to come forward

---

7 At the time of the writing of this report, the Government and the defense are still in the process of resolving certain questions of fact related to the December events and their potential impact on sentence. As such, additional information may be provided to this Court either prior to or on the date of sentencing.

voluntarily in October of 2024, he would not be in the position he is today of facing punishment for his actions.

This decision to come forward on the part of Mr. Reyes, despite the potential consequences he knew he would face, the defense believes, stands out as a rarity in our justice system that should be commended.

Further, while Mr. Reyes not only came forward to admit his guilt, he pled guilty early on in the proceedings, preventing the Government and this Court from wasting valuable time on this prosecution. This is in direct contrast to Valdez, who has failed to take responsibility and was recently indicted for his involvement in this case.

Finally, the defense recognizes the seriousness of the crime for which Mr. Reyes is charged and the impact a crime involving drugs has on the community at large. The defense notes that despite this crime, Mr. Reyes has no violent history, has continued to work to maintain a good life for his children, fiancé and greater family, and is well-liked and respected by all in the community who recognize that this crime does not define him. The defense asks that the Court consider these reasons, along with the incredible uniqueness of the facts behind this case in rendering an appropriate sentence.

## **CONSIDERATION OF GUIDELINES**

18 U.S.C. §§3553 (a)(4)(A) requires a sentencing court to take the advisory sentencing guidelines into consideration. We do not object at this time to the accuracy of the guideline calculations but ask the Court to consider the relevant factors described in this memo when determining an appropriate sentence for Mr. Reyes.

**AVOIDANCE OF UNWARRANTED SENTENCE DISPARITY**

18 U.S.C. §3553(a)(6) requires a sentencing court to determine whether a sentence will result in an unfair disparity between defendants with similar conduct and similar records. However, the events surrounding Mr. Reyes' guilty plea are so unique that one would be hard-pressed to imagine many similar scenarios to the case at bar.

**EDUCATIONAL TRAINING**

Mr. Reyes requires little to no educational and vocational training that could be gained through incarceration. He has worked since the age of 12 and is a high school graduate with some college. A period of imprisonment would be counter-productive, using otherwise needed resources on a man, who already has the means to be a productive member of society.

**PROTECTION OF PUBLIC FROM FURTHER CRIMES**

This offense for which Mr. Reyes is convicted must be viewed in the context of his entire adult life. In addition, his work ethic and strong familial ties all lead to the conclusion that Mr. Reyes will not break the law in the future. Thus, the minimum sentence is sufficient, but not greater than necessary to appropriately account for the need to protect the public.

**DETERRENCE**

Specific and general deterrence is a component of most sentences, although it provides no quantifiable reduction in crime. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of*

*Sentencing*, 34 Crime & Just. 1, 28 (2006).

General deterrence is based, in part, on creating or enhancing a particular individual's sentence based on the prospect of influencing some unknown future wrongdoer who has not committed, or perhaps even contemplated, a crime. However, a person should receive the sentence *they* deserve, without significant consideration for what some other future, unknown person may deserve. According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). If considering the benefits of shorter prison sentences, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. V. Wright, *Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment* (2010), p. 7, http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf. Conversely, when prisoners serve longer sentences, they are more likely to become institutionalized and lose pro-social contacts in the community… all of which promote recidivism. *Id.*

In imposing the least sentence sufficient to account for the need to protect the public from further crimes, this Court should consider the low risk of recidivism presented by Mr. Reyes's history and characteristics. As indicated in the Presentence Investigation Report, Mr. Reyes has fully accepted responsibility for his crime and has admitted guilt. In considering his admission, as well as mitigating factors surrounding his case, it is reasonable to conclude that he does not fit the characteristics of someone who will ever return to criminal behavior.

The true hope of sentencing is to adequately punish an individual, while maintaining or enhancing their ability to be a law-abiding citizen, maintain family ties, avoid recidivism, and obtain proper treatment. A minimum sentence, the Defense argues, fulfills all of the above.

Most significantly, Mr. Reyes' decision to come forward voluntarily and take responsibility for this crime is incredibly rare and should be viewed with the goal of incentivizing others to come forward and show the same courage that Mr. Reyes did. A lengthy period of incarceration does nothing to fulfill that goal.

## **CONCLUSION**

For the foregoing reasons, Mr. Reyes respectfully requests that this Court sentence him to a minimal sentence for the conviction at hand. Mr. Reyes submits that such a sentence is appropriate but not greater than necessary, to meet the statutory goals of sentencing.

Dated: September 8, 2025

Respectfully submitted,

/s/ Julie Rendelman

JULIE RENDELMAN, ESQ.
Law Offices of Julie Rendelman, LLC
Attorney for the Defendant
52 Duane Street, 7th Floor
New York, NY 10007
212-951-1232