Removed



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

September 17, 2025

**BY ECF**

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Ecequiel Reyes*, **24 Cr. 631 (PMH)**

Dear Judge Halpern:

    The Government respectfully submits this letter before the sentencing of defendant Ecequiel Reyes, which is scheduled for September 25, 2025. Reyes pleaded guilty to one count of possession with intent to distribute cocaine and fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The Probation Office recommends a sentence of 84 months' imprisonment. For the reasons set forth below, and particularly in view of the defendant's significant acceptance of responsibility, the Government submits that the Court should consider a downward variance from the stipulated Guidelines range of 108 to 135 months' imprisonment and impose a below-Guidelines sentence, such as the one recommended by Probation, which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I.**    **Offense Conduct and Procedural History**

    From December 19, 2023 to December 20, 2023, Cesar Rodriguez-Valdez ("Valdez") met and communicated with a confidential informant ("CI") to arrange a significant drug deal. (PSR ¶¶ 11-14).[1]

    On December 21, 2023, the defendant, who was sourcing the drugs for the deal, arranged for Valdez to pick up the drugs at a location set by the defendant's supplier. On December 21, 2023, Valdez picked up the drugs and drove the drugs back to a location where he met up with the defendant and Eddy Reyes ("Eddy," the defendant's brother).[2] The group then loaded the drugs

---

[1] "PSR" refers to the Presentence Investigation Report, revised July 23, 2025, which is filed on the docket at ECF No. 27.

[2] Paragraph 24 of the PSR states that the defendant "picked up the drugs from his source and drove to the location area to meet with Eddy Reyes and Cesar Rodriguez-Valdez." PSR ¶ 24. That is not correct. The Government's understanding is that Valdez went to pick up the drugs from the defendant's source and drove the drugs to a place in New Jersey where the defendant and Eddy

into the defendant's vehicle (the "Silver Pickup Truck"), after which all three proceeded to the drug transaction location in separate vehicles. Once in Yonkers, Valdez met with the CI, went to obtain samples of the drugs from the Silver Pickup Truck (*i.e.*, the defendant's vehicle), and then drove to provide those samples to the CI. (PSR ¶¶ 17). Before Valdez could bring the drug samples to the CI, however, he was apprehended by law enforcement after a vehicle pursuit during which he crashed into several occupied cars on a Yonkers thoroughfare. (PSR ¶ 20). The defendant's brother, Eddy, was also apprehended. (PSR ¶ 19). The defendant, however, was not apprehended, and was able to leave the drug transaction location undetected.

Upon searching the Silver Pickup Truck, law enforcement recovered 7 kilograms of fentanyl and 4 kilograms of cocaine. (PSR ¶ 22). An additional kilogram of fentanyl and kilogram of cocaine were recovered in or around Valdez's vehicle when he was apprehended. (PSR ¶ 20). In total, law enforcement recovered 13 kilograms of narcotics, including eight kilograms of fentanyl. (PSR ¶¶ 20, 22). Valdez and Eddy were then arrested. (PSR ¶¶ 25-26).

On October 17, 2024, the defendant proffered with the Government and admitted his role in the drug transaction. (*See* PSR at 26).

On November 6, 2024, based on an agreement between Reyes and the Government, Reyes self-surrendered to law enforcement. (PSR at 1; *id.* ¶¶ 6, 27). That same day, an Information was filed charging Reyes with one count of narcotics trafficking, in violation of 21 U.S.C. § 841(b)(1) and (b)(1)(C). (PSR ¶ 1).

On January 10, 2025, Reyes signed a plea agreement (the "Plea Agreement") in which he pleaded guilty to one count of narcotics trafficking, in violation of 21 U.S.C. § 841(b)(1) and (b)(1)(C). (PSR ¶ 5).

## II. The Guidelines Range

In the Plea Agreement, the parties calculated the Guidelines range as follows (*see* PSR ¶ 5):

a. The Guideline applicable to the offense charged in Count 1 of the Information is U.S.S.G. § 2D1.1.

b. Pursuant to U.S.S.G. § 2D1.1, Application Note 8, subsection B, because the defendant possessed differing controlled substances, that is 8 kilograms of Nphenyl-N[1-(2-phenylethyl-4piperidinyl] propenamide (also known as Fentanyl) and 5 kilograms of cocaine, the base offense level is calculated by applying the Drug Conversion Table in § 2D1.1 Application Note 8, subsection D.

    i. Under the Drug Conversion table, 1 grams of Cocaine equates to 200 grams of Converted Drug Weight. Because the defendant possessed 8 kilograms

---

Reyes were located. The Government therefore requests that the PSR be modified accordingly. Today, the parties jointly proposed revisions to the PSR for Probation's consideration.

       (or 8,000 grams) of fentanyl, the Converted Drug Weight is 20,000 kilograms.

      ii. Under the Drug Conversion Table, 1 gram of Cocaine equates to 200 grams of Converted Drug Weight. Because the defendant possessed 5 kilograms (or 5,000 grams) of Cocaine, the Converted Drug Weight is 1,000,000 grams (or 1,000 kilograms).

  c. The combined Converted Drug Weight is therefore 21,000 kilograms. Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(3), the base offense level is 34, because the defendant possessed at least 10,000 kilograms but less than 30,000 kilograms of Converted Drug Weight.

  d. A three-level decrease for acceptance of responsibility is warranted pursuant to USSG § 3E1.1. Therefore, the total offense level is 31.

In the Plea Agreement, the parties calculated that the defendant had 1 criminal history point, resulting in a Guidelines range of 108 to 135 months' imprisonment. (PSR ¶ 5).

Probation agrees with the Guidelines calculation in the Plea Agreement. (PSR ¶ 94). It recommends a below-Guidelines sentence of 84 months' imprisonment followed by 3 years' supervised release. (PSR at 25).

## III. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). District courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)–(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV.  A Below-Guidelines Sentence Is Appropriate

The Government submits that the Court should vary downwards from the Guidelines range and sentence the defendant to a below-Guidelines sentence, such as the one recommended by Probation, which the Government believes would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. Such a sentence is needed to reflect the nature and seriousness of Reyes's offense, deter future misconduct by him and protect the public, and to account for his history and characteristics. *See* 18 U.S.C. § 3553(a).

The instant offense, which involves a conspiracy to distribute 8 kilograms of fentanyl and 5 kilograms of cocaine, is incredibly serious. Fentanyl, in particular, is a scourge on communities throughout the United States, including communities in the Southern District of New York, and is a major contributor to the nation's current opioid epidemic.[3] Conspiring to distribute any quantity of fentanyl is illegal. Given its potency, Congress has determined that conspiring to distribute 400 grams of fentanyl is, in many cases, sufficient to merit a mandatory minimum sentence of 10 years' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A).  Here, the defendant possessed and, in fact, attempted to distribute eight *kilograms* of fentanyl—*twenty times* the statutory amount for a violation of Section 841(b)(1)(A). Put differently, if the defendant had discarded 95% of the drugs he planned to sell, he would *still* face the same statutory sentence. And that is for good reason. As the Court is aware, the United States is still suffering from an opioid crisis that has tragically taken tens of thousands of lives, driven primarily by synthetic opioids such as fentanyl.

---

[3] The Drug Enforcement Administration reports that Fentanyl is 50 times more potent than heroin and 100 times more potent than morphine. https://www.dea.gov/sites/default/files/2025-01/Fentanyl-Drug-Fact-Sheet.pdf (last visited Mar. 6, 2025). Drug trafficking crimes like the one Reyes committed "positively correlates with . . . [an] increase in overdose fatalities."

According to the DEA, "fentanyl is the single deadliest drug threat our nation has ever encountered."[4] Because of its potency and low cost, fentanyl is often mixed with other drugs, such as heroin and cocaine, in order to increase the potency of those drugs, which, in turn, increases the likelihood of a fatal interaction for a drug user who did not know that the drugs they were purchasing were laced with fentanyl. Mixing other narcotics with fentanyl is not an exact science and as little as two milligrams of fentanyl can be lethal depending on the person's body size, tolerance, and past usage. The number of deaths linked to synthetic opioids, such as fentanyl, is harrowing. Indeed, according to the Centers for Disease Control and Prevention (the "CDC"), out of approximately 105,000 deaths from drug poisonings in this country in 2023, it is estimated that 80,000 of these deaths, or 76%, resulted from opioids (primarily synthetic opioids like fentanyl).[5] In view of the defendant's participation in a conspiracy to distribute large-scale quantities of narcotics, including fentanyl, a significant sentence of imprisonment is necessary to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and to protect the public from further crimes of the defendant.

While the nature and seriousness of the offense weigh strongly in favor of a Guidelines sentence, the Government also recognizes that the defendant, who has minimal criminal history, took the exceptional step of voluntarily meeting with the Government and admitting guilt. At the time the defendant self-surrendered, the Government was continuing to investigate his involvement and had gathered significant evidence supporting criminal charges. That evidence included confessions from Valdez and Eddy Reyes (in which they both inculpated the defendant), evidence from Eddy Reyes's phone showing that he forwarded a hotel booking confirmation to the defendant for the same date, time, and hotel where the Silver Pickup Truck was found by law enforcement, the recovery of the defendant's keys in the Silver Pickup Truck along with the drugs, and cell phone location information that tracked the group's movement together from New Jersey to Yonkers on December 21, 2023. Nonetheless, the Government understands that the defendant elected to admit guilt with the hope—but not the guarantee—that doing so would result in a lesser sentence for his brother, Eddy, who the Government charged after the drug transaction in December 2023. In view of his pre-charge admission of guilt, the Government believes that the defendant should receive credit for exceptional acceptance of responsibility, which supports a downward variance below the Guidelines range.

V.   **Conclusion**

Given the need for the defendant's sentence to reflect the nature and seriousness of his offense, afford adequate deterrence to him, promote respect for the law, and protect the public from further crimes by him, the Government submits that a below-Guidelines sentence, such as

---

[4] https://www.dea.gov/stories/2023/2023-02/2023-02-08/overdose-death-investigations-challenge-dea-agents-bring-justice.

[5] https://www.cdc.gov/overdose-prevention/about/understanding-the-opioid-overdose-epidemic.html

the one recommended by Probation, would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

>Respectfully submitted,
>
>JAY CLAYTON
>United States Attorney
>for the Southern District of New York
>
>By: _____
>Reyhan Watson
>Assistant United States Attorney
>(914) 993-1965
>Reyhan.Watson@usdoj.gov

cc: Julie Rendelman, Esq. (By ECF and Email)